**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
www.flsb.uscourts.gov

**In re:**

**DECORATOR INDUSTRIES, INC.,**　　　　　　　　　Case No. 11-37641-BKC-JKO
　　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 11
　　　　**Debtor.**
_____/

**DEBTOR'S EMERGENCY MOTION FOR ORDER (A) AUTHORIZING THE DEBTOR (1) TO USE CASH COLLATERAL ON AN INTERIM BASIS PURSUANT TO 11 U.S.C. § 363, AND (2) TO PROVIDE ADEQUATE PROTECTION IN CONNECTION THEREWITH PURSUANT TO 11 U.S.C. § 361, (B) SETTING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b), AND (C) TERMINATING LOCKBOX ARRANGEEMNT WITH CRESTMARK BANK AND RELATED RELIEF**

**(Emergency Hearing Requested on or before October 5, 2011)**

**BASIS FOR EMERGENCY RELIEF**

> The Debtor seeks (i) to pay its ordinary and necessary operating expenses so as to preserve the value of its assets and bankruptcy estate, (ii) to protect and preserve approximately 200 jobs, and (iii) to facilitate the continued operation of the Debtor's business. Without the immediate authorization to use cash collateral, the Debtor will be irreparably harmed because the Debtor will not be able to meet its payroll obligations, acquire goods and services necessary for its day-to-day operations, pay its ordinary and necessary operating expenses or generally maintain and preserve the going concern, enterprise value of its business.

Decorator Industries, Inc., as debtor-in-possession in the above-styled Chapter 11 proceeding (the "Company" or the "Debtor"), hereby files this *Emergency Motion for an Order (A) Authorizing the Debtor (1) to use Cash Collateral on an Interim Basis Pursuant to 11 U.S.C. § 363 and (2) to Provide Adequate Protection in Connection Therewith Pursuant to 11 U.S.C. §361, (B) Setting a*

*Final Hearing Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4003-2, and (C) Terminating Lockbox Arrangement with Crestmark Bank and for Related Relief* (the "Motion").  In support of the Motion, the Debtor relies on the Declaration of William A. Johnson, President and Chief Executive Officer of Decorator Industries, Inc, in Support of Chapter 11 Petitions and First Day Motions (the "First Day Declaration") filed contemporaneously herewith.  In further support of this Motion, the Debtor respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over the Chapter 11 case pursuant to 28 U.S.C. §§157 and 1334.  Venue of the Chapter 11 case is proper in this district pursuant to 28 U.S.C. §1408.

## BACKGROUND

### A. The Chapter 11 Filings

2. On October 3, 2011, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business as a Debtor-in-possession pursuant to sections 1107(a) and 1109 of the Bankruptcy Code (the "Bankruptcy Code").

3. No creditors' committee has yet been appointed in this case.  In addition, no trustee or examiner has been appointed.

### B. Background and Current Business Operations

4. The Debtor designs, manufactures and sells a broad range of interior furnishings, principally draperies, curtains, valance boards, shades, blinds, bedspreads, comforters, pillows, cushions and cubicle curtains (the "Business").  These products are sold to original equipment manufacturers of recreational vehicles and manufactured housing and to the hospitality (motels/hotels) and healthcare markets either through distributors or directly to the customers.

5. The Debtor has operating plants located in Haleyville, Alabama, Red Bay, Alabama,

Goshen, Indiana, Bossier City, Louisiana, Salisbury, North Carolina, and Abbotsford, Wisconsin. The Company also has administrative offices in Pembroke Pines, Florida and Hackensack, New Jersey.

6. Further information regarding the Debtor's business, capital structure, and the events leading to these Chapter 11 filings are set forth in the First Day Declaration.

## CASH COLLATERAL AND THE RELIEF SOUGHT BY THE DEBTOR

### C. Relief Requested.

7. By this Motion, the Debtor seeks the entry of an interim order (the "Interim Order") in the form attached hereto as Exhibit "A" authorizing, on an emergency and limited basis, the use of Cash Collateral (as that term is defined in Section 363(a) of the Bankruptcy Code) in accordance with the four (4) week Budget attached hereto as Exhibit "B." The filing of this Motion does not constitute an admission by the Debtor that the secured lender holds valid liens on the Debtor's cash or cash equivalents or any other assets. The Debtor reserves the right to contest the validity, priority and extent of the alleged liens and alleged claims of the Lender.

8. An immediate and critical need exists for the Debtor to be permitted access to Cash Collateral in order to continue to operate its business, pay its payroll and other ordinary and necessary operating expenses, maintain hundreds of jobs and preserve its ongoing, enterprise value. Among other things, the entry of an Interim Order, is in the best interests of the Debtor, its creditors and bankruptcy estate because it will enable the Debtor to (i) continue the orderly operation of its business and avoid an immediate shutdown of operations; (ii) meet its obligations for payroll, necessary ordinary course expenditures, and other operating expenses; (iii) make payments authorized under other Orders entered by this Court; (iv) obtain needed goods and services; (v) retain customer, supplier and employer confidence by demonstrating that it has the financial ability to maintain normal operations; and (vi) maintain adequate cash resources customary and necessary for companies of this

3

size and in the industries in which its operates to maintain customer confidence, thereby avoiding immediate and irreparable harm to the Debtor's estate.

9. Therefore, the Debtor seeks an emergency interim hearing (the "Interim Hearing") in accordance with Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Local Rule 9013-1(F) and (G). At the Interim Hearing, the Debtor will seek entry of the Interim Order.

10. By this Motion, the Debtor further seeks a final hearing (the "Final Hearing") on this Motion, to be held no less than fifteen (15) days from service of a notice of hearing on such Final Hearing, in accordance with Bankruptcy Rule 4001(b)(2) and (3).

**D.    Pre-Petition Loan Documents**.

11. The Debtor is indebted to Crestmark Bank (the "Lender" or "Crestmark") under a revolving credit facility pursuant to the terms of (i) that certain Promissory Note (the "Note") executed by the Debtor in favor of Crestmark dated April 20, 2010, in the original principal amount of Two Million and No/100 Dollars ($2,000,000.00) (the "Loan"), and (ii) that certain Loan Security Agreement dated April 20, 2010 (collectively the "Loan Documents").

12. As of the Petition Date, the unpaid balance on the Note is approximately $1,063,663.77.

13. Pursuant to the Loan Documents, any cash or cash equivalents, funds or proceeds of or derived from certain of the collateral securing the obligations of the Debtor may constitute cash collateral within the meaning of Section 363 of the Bankruptcy Code (the "Cash Collateral").

14. In connection with the Debtor's proposed use of Cash Collateral hereunder and in order to provide the Lender with adequate protection for the aggregate diminution of the Cash Collateral resulting from the Debtor's use thereof, the Debtor has agreed, subject to approval of this

Court, that the Lender, shall have, *nunc pro tunc* as of the commencement of this Chapter 11 case, adequate protection for the use of Cash Collateral in accordance with sections 11 U.S.C. §361(2) and 363(e) of the Bankruptcy Code, in the form of a replacement lien pursuant to on and in all property of the Debtor acquired or generated after the Petition Date, but solely to the same extent and priority, and of the same kind and nature, as the property of the Debtor securing the prepetition obligations to the Lender under the Loan Documents (the "Replacement Lien").

15. For avoidance of doubt, the Lender shall not have or be granted a Replacement Lien on or against any claims or causes of action arising under Sections 542 through 550 of the Bankruptcy Code (the "Avoidance Actions") or on or against the proceeds of the Avoidance Actions.

16. In the event that diminution occurs in the value of Cash Collateral from and after the Petition Date as a result of the Debtor's use thereof in an amount in excess of the value of the Replacement Lien granted herein, then the Lender shall have an administrative expense claim under section 507(b) of the Bankruptcy Code with priority over all other administrative expense claims, subject to the Carve Out, as hereinafter defined. Notwithstanding anything herein to the contrary, the Lender's super-priority administrative expense claim shall not attach to or be paid from the proceeds of the Avoidance Actions.

17. In addition, the Lender asserts that it is secured by, among other things, the Debtor's accounts receivable. Generally, the Debtor's customers remit their payments directly into a dedicated lockbox account at Crestmark Bank (the "Lockbox Account"). Absent the existence of an event of default under the relevant Loan Documents, the amounts in the Lockbox Account are swept daily by the Lender, and utilized to reduce and pay down the revolving portion of the Loan, thus increasing the Company's availability for borrowing under the Loan in accordance with a certain borrowing base formula set forth in the Loan Agreement (the "Advance Formula").

5

18.     However, upon the occurrence of an event of default (including the filing of the Debtor's bankruptcy), the Lockbox Account to which the Debtor's customers remit their payments may become "blocked" – *i.e.,* frozen, meaning that collections on the Debtor's accounts receivable will continue to accumulate in the Lockbox Account, but the Debtor will not have access to any advances under the Loan.  Moreover, the automatic stay provisions of the Bankruptcy Code will prevent the repayment of the Loan by the Lender from the funds on deposit in the Lockbox Account as of the Petition Date, as well as those funds deposited in the Lockbox Account after the Petition Date.  Therefore, without the relief requested by the Debtor in this Motion in respect of the use of Cash Collateral, free of the restrictions of the Lockbox Account and free of the requirements under the Advance Formula, the Debtor will not have access to any Cash Collateral in order to preserve their businesses or pay their ordinary and necessary operating expenses.  Specifically, as part of the relief requested herein, the Debtor requests that all monies on deposit in the Lockbox Account as of the filing of the Chapter 11 case, as well as all funds thereafter deposited into the Lockbox Account, be made available for use by the Debtor in its operations pursuant to the relief requested in this Motion and in accordance with the Budget and the other provisions of the Interim Order.  The Debtor further requests that the use of Cash Collateral be free of the restrictions imposed on the Lockbox Account in accordance with the Loan Documents, including compliance with the Advance Formula, and that the Lender be prohibited from blocking the Debtor's access to such funds, including within the scope of the Budget and the Interim Order.

19.     The Debtor proposes to use the Cash Collateral strictly in accordance with the terms of that certain Budget prepared by the Debtor and attached hereto.  The Budget covers the four (4) week period from the Petition Date through October 29, 2011.  The Debtor also requests that it be authorized on a weekly basis to exceed the amounts set forth in the Budget by the sum of (x) 110% of

the disbursements projected for such week in the Budget, plus (y) (except for the first week) any unused portion of the disbursements projected for any prior week in the Budget (but excluding, for avoidance of doubt, any amounts in excess of 100% of the projected disbursements for any week).

20. The Debtor requests that the Replacement Lien and administrative expense claims granted to the Lender pursuant to the terms of the Interim Order be at all times subject and junior to: (i) all unpaid compensation and reimbursement of expenses of professionals (including any unpaid holdback amounts) employed by the Debtor's estate by order of the Court (the "Professionals") accrued or incurred on or before the earlier of entry of an order terminating the Debtor's use of cash collateral (the "Termination Date") that are allowed and payable under 11 U.S.C. §§330 and 331 and/or any orders of the Court, regardless of whether allowed before such Termination Date; (b) compensation and reimbursement of expenses of Professionals accrued or incurred after the Termination Date in connection with the wind-down of the Chapter 11 case and conversion to chapter 7 case, if the case is converted to chapter 7 case either voluntarily or involuntarily, (c) all unpaid fees due to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; and (d) all unpaid fees required to be paid to the Clerk of the Bankruptcy Court (collectively, the "Carve Out").

21. In addition to the Replacement Lien and super-priority administrative clams provided to the Lender hereunder, the Debtor will furnish the Lender with such financial and other information as required by the Loan Documents or other reports as the Lender may reasonably request.

22. The Replacement Lien granted to the Lender hereunder in connection with the use of the Cash Collateral shall be valid and perfected without the need for the execution or filing of any further documents or instruments.

## APPLICABLE AUTHORITY FOR RELIEF REQUESTED

**A.**     **The Court Should Approve the Debtor's Requested Use of Cash**

**Collateral To Extent Requested Herein.**

23.     A debtor's use of estate property is governed by Section 363 of the Bankruptcy Code. Section 363(c)(l) provides that a debtor may use estate property in the ordinary course of business without notice or a hearing.  Section 363(c)(2) imposes specific limitations upon property that constitutes cash collateral and provides that a debtor can only use, sell or lease cash collateral either if the entity with an interest in the cash collateral consents or the Court authorizes such use.   The Debtor, through its professionals, will use its best efforts to come to terms with the Lender on the consensual use of cash collateral prior to the hearing on this Motion.  The Debtor is hopeful that they will be able to do so.  To the extent that the Debtor and the Lender cannot reach such an agreement, this Court should approve the Debtor's use of the Lender's Cash Collateral pursuant to Section 363(c)(2) of the Bankruptcy Code under the terms proposed herein.

**B.     The Court Should Enter an Order Authorizing the Continued Use of Cash Collateral Because the Debtor Is Providing the Lender with Adequate  Protection.**

24.     Pursuant to the terms hereof, the Debtor is providing and will provide adequate protection to the Lender as contemplated and required by Sections 361, 363(c)(2)(B) and 363(e), respectively, and hereby seeks the Court's approval thereof.  The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property.  *See* 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis.  *In re Swedeland Dev. Group Inc.,* 16 F.3d 552, 564 (3d Cir. 1994) (*citing In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. l987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

25.     Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained.  *Swedeland*, 16 F.3d at 564 (*citing O'Connor*, 808 F.2d at 1396) ("the

8

whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy"). Courts have noted that "the essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation." *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982). The focus of this requirement is to protect a secured creditor from diminution in the value of its collateral during the use period. *See In re Kain*, 86 B.R 506, 513 (Bankr. W.D. Mich.1988); *In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

26. The Debtor's requested use of Cash Collateral and the protections afforded to the Lender herein, including but not limited to, the Replacement Lien, the super-priority administrative expense claim and Debtor's willingness to continue to provide reporting to the Lender, in light of the circumstances of this Chapter 11 case, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Lender's Collateral.

**C.    The Use of Cash Collateral Will Preserve the Debtor's Going Concern Value, Which Will Inure to the Benefit of the Lender.**

27. The continued operation of the Debtor's business will preserve and maintain its going concern, enterprise value and enable the Debtor to capitalize on that value by allowing the Debtor to pursue an effective reorganization of its business and capital structure. However, as discussed above, if the Debtor is not allowed to use Cash Collateral, then its business operations will be substantially interrupted and will likely shut down. This would result in a significant diminution in the value of the Debtor's assets (including the Cash Collateral) to the detriment of the Debtor's Lender, as well as the other creditors of these estates.

28. It is well established that a bankruptcy court, where possible, should resolve issues in

favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use Acash collateral@ in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.,* 727 F.2d 1017, 1019 (11th Cir. 1984).

29. Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value. For example, in *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtor's continued operations and the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]" *Id.* at 460; *see also Federal Nat. Mort. v. Dacon Bolingbrook Assocs.*, 153 B.R. 204, 214 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of the property); *In re Constable Plaza Assoc.,* 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage"); *In re Dynaco Corp.,* 162 B.R. 389, 395-96 (Bankr. D.N.H. 1983) (finding that the alternative to the debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.,* 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on postpetition property acquired by debtor; debtors can use cash collateral "in the normal operation of their business").

30. As discussed above, the Debtor proposes to use Cash Collateral in the ordinary course of its business to, among other things, continue to operate and maintain its operations, thereby insuring the continued operation of the Business. If the Debtor cannot continue to use Cash

Collateral, they likely will be forced to cease operations. This cessation would irreparably damage the Debtor's business by causing, among other things, customer defections, employee attrition, lost revenues, loss of business reputation, and even worse, potentially leaving numerous employees without jobs. By contrast, granting authority to use Cash Collateral will allow the Debtor to maintain operations and preserve the going concern value of its business, which will inure to the benefit of the Lender and all other creditors.

**D.    The Lender is Adequately Protected by the Grant of Replacement Lien on Post Petition Assets.**

31.    The Bankruptcy Code expressly provides that "granting a replacement lien is a means of adequate protection." 11 U.S.C. § 361(2). Granting replacement liens provides ample adequate protection of the secured creditor's interest in cash collateral. *See, e.g., In re O'Connor*, 808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas. Inc.,* 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984). The Debtor will adequately protect the Lender's interests in Cash Collateral by, among other things, providing Replacement Lien in the Debtor's assets of the same type as the Lender held pre-petition to the extent the Debtor's use of Cash Collateral results in a post-petition decrease in the value of the Collateral securing the Lender's claims. Such Replacement Lien will be of the same validity and priority as the Lender=s pre-petition liens and security interests.

32.    The Debtor believes that use of Cash Collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects the Lender through the combination of: (i) the Debtor's ability to preserve the going concern value of the business with the use of Cash Collateral; (ii) the post-petition Replacement Lien granted to the Lender; (iii) the super-priority administrative expenses granted to the Lender herein, and (iv) providing the Lender with the other protections set forth herein, including the availability of financial reporting. Specifically, the Budget

clearly shows that the combination of cash and accounts receivable as of the Petition Date are projected to increase over the period of the Budget, thereby providing the Lender with adequate protection. For all of the reasons stated above, this Court's approval of the Debtor's use of the Lender's Cash Collateral is proper herein.

**WHEREFORE**, the Debtor respectfully request that the Court (A) grant this Motion and enter the Interim Order in the form attached hereto as *Exhibit "A"* authorizing the Debtor (i) to use the Cash Collateral of the Lender pursuant to the terms set forth above and in accordance with the Budget, (ii) to grant the Replacement Lien and super-priority administrative expense claims as set forth above in connection with the use thereof, (B) schedule a final hearing on this Motion, (C) terminate the Lockbox arrangement with the Lender, and (D) grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 3rd day of day of October, 2011.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

GENOVESE JOBLOVE & BATTISTA, P.A.
Proposed Attorneys for Debtor-in-Possession
4400 Miami Tower
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile : (305) 349-2310

By: /s/ *Paul J. Battista*
    Paul J. Battista, Esq.
    Florida Bar No. 884162
    pbattista@gjb-law.com
    Mariaelena Gayo-Guitian, Esq.
    Florida Bar No. 0813818
    mguitian@gjb-law.com
    Heather L. Harmon, Esq.
    Florida Bar No. 013192
    hharmon@gjb-law.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
**Fort Lauderdale Division**
www.flsb.uscourts.gov

**In re:**

**DECORATOR INDUSTRIES, INC.,**          Case No. 11-37641-BKC-JKO
                                         **Chapter 11**

      **Debtor.**
_____/


**RTQRQUGF 'INTERIM ORDER (A) AUTHORIZING THE DEBTOR (1) TO USE CASH COLLATERAL ON AN INTERIM BASIS PURSUANT TO 11 U.S.C. § 363, AND (2) GRANTING ADEQUATE PROTECTION IN CONNECTION THEREWITH PURSUANT TO 11 U.S.C. § 361, (B) SETTING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001, AND (C) TERMINATING <u>LOCKBOX ARRANGEEMNT WITH CRESTMARK BANK</u>**

**THIS MATTER** came before the Court on October 5, 2011 at _____ a.m./p.m. upon the

*Debtor's Emergency Motion For Order (A) Authorizing The Debtor's (1) To Use Cash Collateral*

*On An Interim Basis Pursuant To 11 U.S.C. § 363, And (2) To Provide Adequate Protection In*

*Connection Therewith Pursuant To 11 U.S.C. § 361, (B) Setting A Final Hearing Pursuant To*

*Bankruptcy Rule 4001 and Local Rule 4003-2, And (C) Terminating Lockbox Arrangement with Crestmark Bank and Related Relief* [D.E.____ ] (the "Motion") through which the Debtor seeks entry of interim and final orders authorizing the use of Cash Collateral[1] of Crestmark Bank (the "Lender" or "Crestmark") and termination of the Lockbox arrangement. The Court finds that it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 157 and 1334; this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); the relief requested in the Motion is in the best of interest of the Debtor, its bankruptcy estate and its creditors; the adequate protection proposed to the Lender is reasonable, sufficient and appropriate in connection with the Debtor's proposed use of cash collateral pursuant to the Motion, and proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; and upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein. Accordingly, it is

**ORDERED as follows:**

1. The relief requested in the Motion is granted on an interim basis.

2. The Debtor is authorized to use any and all Cash Collateral, as defined in 11 U.S.C. §363(a) and in the Motion, on an interim basis and in accordance with the 4 week Budget attached hereto as *Exhibit "A"* (the "Interim Budget") pending a final hearing on the Motion.

3. Within three (3) business days after the date hereof, the Lender shall transfer to the Debtor, for deposit into the Debtor's debtor in possession bank account, all proceeds contained in the Lockbox. From and after the date hereof, the Lender shall transfer any receipts received into the Lockbox to the Debtor for deposit into the Debtor's debtor in possession account, which transfers shall take place no later than three (3) business days after receipt thereof by the Lender. All such

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

funds shall be subject to the Interim Order and any further order of this Court.

4. The Debtor shall be authorized to exceed the amounts set forth in the Budget by the sum of (x) 110% of the disbursements projected for such week in the Budget, plus (y) (except for the first week) any unused portion of the disbursements projected for any prior week in the Budget (but excluding, for avoidance of doubt, any amounts in excess of 100% of the projected disbursements for any week).

5. In connection with the Debtor's proposed use of Cash Collateral and in order to provide the Lender with adequate protection for the aggregate diminution of the Cash Collateral resulting from the Debtor's use thereof, the Lender, shall have, *nunc pro tunc* as of the commencement of this Chapter 11 case, a replacement lien pursuant to 11 U.S.C. §361(2) on and in all property of the Debtor acquired or generated after the Petition Date, but solely to the same extent and priority, and of the same kind and nature, as the property of the Debtor securing the prepetition obligations to the Lender under the Loan Documents (the "Replacement Lien").

6. The Replacement Lien and administrative expense claim granted to the Lender pursuant to the terms of this Interim Order shall be at all times subject and junior to: (i) all unpaid compensation and reimbursement of expenses of professionals (including any unpaid holdback amounts) employed by the Debtor's estate by order of the Court (the "Professionals") accrued or incurred on or before the earlier of entry of an order terminating the Debtor's use of cash collateral (the "Termination Date") that are allowed and payable under 11 U.S.C. §§330 and 331 and/or any orders of the Court, regardless of whether allowed before such Termination Date; (b) compensation and reimbursement of expenses of Professionals accrued or incurred after the Termination Date in connection with the wind-down of the Chapter 11 case and conversion to chapter 7 case, if the case is converted to chapter 7 case either voluntarily or involuntarily, (c) all unpaid fees due to the Office of

the United States Trustee pursuant to 28 U.S.C. § 1930; and (d) all unpaid fees required to be paid to the Clerk of the Bankruptcy Court (collectively, the "Carve Out").

7. For avoidance of doubt, the Lender shall not have or be granted a Replacement Lien on or against any claims or causes of action arising under Sections 542 through 550 of the Bankruptcy Code (the "Avoidance Actions") or on or against the proceeds of the Avoidance Actions.

8. In the event that diminution occurs in the value of Cash Collateral from and after the Petition Date as a result of the Debtor's use thereof in an amount in excess of the value of the Replacement Lien granted herein, then the Lender shall have an administrative claim under section 507(b) of the Bankruptcy Code with priority over all other administrative expense claims, subject to the Carve Out, as defined herein. Notwithstanding anything herein to the contrary, the Lender's super-priority administrative expense claim shall not attach to or be paid from the proceeds of the Avoidance Actions.

9. In addition to the Replacement Lien and super-priority administrative clams provided to the Lender hereunder, the Debtor will furnish the Lender with such financial and other information as required by the Loan Documents or other reports as the Lender may reasonably request.

10. The Replacement Lien granted to the Lender in connection with the use of the Cash Collateral shall be valid and perfected, as of the Petition Date, without the need for the execution or filing of any further documents or instruments.

11. Nothing in this Order shall constitute an adjudication of the validity, priority or extent of Lender's liens, or the amount of its claim, and all rights, claims and defenses with respect thereto are expressly preserved for the Debtor and any Unsecured Creditor Committee that may be appointed in this Chapter 11 case.

12. Pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure a **final hearing**

**on the Motion shall be held on October \_\_\_ , 2011 at _____a.m./p.m.** )the "Final Hearing") at the United States Bankruptcy Court, 299 East Broward Boulevard, Room \_\_\_, Fort Lauderdale, FL 33301**.**

      13.      Any party-in-interest objecting to or responding to the permanent relief requested in the Motion shall file a written objection or response describing in detail the grounds thereof and serve a copy no later than three (3) calendar days before the Final Hearing on the following parties (a) the Debtor and its bankruptcy counsel, Paul J. Battista, Esq., (b) Crestmark Bank and its counsel and (c) the Office of the United States Trustee for the Southern District of Florida.

      14.      This Court retains jurisdiction to enforce all provisions of this Interim Order.

      15.      This Order shall be effective immediately upon execution.

###

Submitted by:

Paul J. Battista, Esq.
Genovese Joblove & Battista, P.A.
Counsel to Debtors-in-Possession
100 Southeast Second Street, Suite 4400
Miami, FL 33131
Telephone:  (305) 349-2300
Facsimile:   (305) 349-2310
pbattista@gjb-law.com

Copy to: Paul J. Battista, Esq.
(Attorney Battista is directed to serve a conformed copy of this Order on all parties in interest and list of 20 largest creditors)

Decorator Industries, Inc
Cash Budget & AR forecast
October 2 to October 29, 2011

| Week Ending | 10/8/2011 | 10/15/2011 | 10/22/2011 | 10/29/2011 |
|---|---|---|---|---|
| Beginning cash balance | $ 750,000 | $ 692,678 | $ 800,678 | $ 851,678 |
| Projected collections | 320,000 | 320,000 | 320,000 | 320,000 |
| Expenditures | | | | |
| Payroll | 30,000 | 30,000 | 30,000 | 30,000 |
| Fabric, Supplies, Freight | 133,000 | 76,000 | 133,000 | 76,000 |
| Facility Rent | 106,000 | 106,000 | 106,000 | 106,000 |
| Health Insurance | 22,322 | | | |
| Commission Reps | 64,000 | | | |
| | 22,000 | | | |
| Weekly Total | 377,322 | 212,000 | 269,000 | 212,000 |
| Ending cash balance | $ 692,678 | $ 800,678 | $ 851,678 | $ 959,678 |
| Ending Accounts Receivable | 1,390,000 | 1,380,000 | 1,365,000 | 1,345,000 |
| Total Cash and AR | $ 2,082,678 | $ 2,180,678 | $ 2,216,678 | $ 2,304,678 |