**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flsb.uscourts.gov**

In re:

**DECORATOR INDUSTRIES, INC.,**                    **Case No. 11-**
                                                                        **Chapter 11**

             **Debtor.**
_____/

**EMERGENCY APPLICATION OF DEBTOR-IN-POSSESSION FOR EMPLOYMENT**
***NUNC PRO TUNC* OF PAUL J. BATTISTA AND THE LAW FIRM OF GENOVESE**
**JOBLOVE & BATTISTA, P.A., AS GENERAL BANKRUPTCY COUNSEL FOR**
**DEBTOR-IN-POSSESSION, AND REQUEST FOR INTERIM RELIEF**

**(Emergency Hearing Requested on Wednesday, October 5, 2011)**

**BASIS FOR EMERGENCY RELIEF**

Without general bankruptcy counsel, the Debtor is technically unable to proceed with this case.  GJB will play an integral role in the first 21 days of this Chapter 11 case. Among other things, the Debtor will need GJB's assistance in stabilizing business operations, negotiating with key creditor constituencies and addressing issues related to the "first day" hearing and related orders.

Decorator Industries, Inc., as debtor and debtor-in-possession in the above-captioned case

(collectively, the "Debtor" or the "Company"), respectfully requests the entry of an interim order, in

the form attached hereto as Exhibit A, pursuant to Sections 327 and 330 of Title 11 of the United

States Code (hereinafter the "Bankruptcy Code") and Rules 2014, 2016 and 6003 of the Federal

Rules of Bankruptcy Procedure, authorizing the employment of Paul J. Battista ("Battista") and the

law firm of Genovese Joblove & Battista, P.A. ("GJB") *nunc pro tunc* to the Petition Date, as

hereinafter defined, to represent the Debtor as its general bankruptcy counsel in this Chapter 11 case.

 In support of this Application, the Debtor relies on the Affidavit of Paul J. Battista attached hereto

as Exhibit B (the "Battista Affidavit") and the Declaration of William A. Johnson, in Support of Chapter 11 Petition and First Day Motions (the "Johnson Declaration") which is being filed concurrently herewith.  In further support of this Application, the Debtor respectfully represents as follows:

<b><u>BACKGROUND</u></b>

A.   <u>The Chapter 11 Filing</u>

1.      On October 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      No creditors' committee has yet been appointed in this case.  In addition, no trustee or examiner has been appointed.

3.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      The statutory predicates for the relief requested herein are Sections 327(a) and 330 of the Bankruptcy Code and Rules 2014, 2016 and 6003 of the Federal Rules of Bankruptcy Procedure.

B.   <u>Background and Business Operations</u>

5.      The Company designs, manufactures and sells a broad range of interior furnishings, principally draperies, curtains, valance boards, shades, blinds, bedspreads, comforters, pillows, cushions and cubicle curtains.  These products are sold to original equipment manufacturers of recreational vehicles and manufactured housing and to the hospitality (motels/hotels) and healthcare

markets either through distributors or directly to the customers.

6.    The Company has plants located in Haleyville, Alabama, Red Bay, Alabama, Goshen, Indiana, Bossier City, Louisiana, and Abbotsford, Wisconsin.  The Company also has administrative offices in Cooper City, Florida and Hackensack, New Jersey.

7.    For further information on the Debtor's capital structure, business and operations, the Debtor refers to the Johnson Declaration filed contemporaneously herewith.

## RELIEF REQUESTSED

8.    By this Application, the Debtor seeks to employ and retain Paul J. Battista, Esq. and the law firm of GJB as its general restructuring and bankruptcy counsel with regard to the filing of its Chapter 11 petition and the prosecution of its Chapter 11 case.  Accordingly, the Debtor respectfully requests the entry of an interim order on an emergency basis pursuant to Section 327(a) of the Bankruptcy Code, followed by the entry of a final order to be entered at a hearing to be held twenty-one (21) days later, authorizing it to employ and retain Paul J. Battista, Esq. and the law firm of GJB as its general bankruptcy counsel under a general retainer to perform the legal services that will be necessary during its Chapter 11 case as more fully described below.

9.    Prior to the commencement of this Chapter 11 case, the Debtor sought the services of GJB principally with respect to advice regarding restructuring matters in general, and the preparation for and potential commencement and prosecution of a Chapter 11 case for the Debtor.  The Debtor believes that the continued representation by its pre-petition restructuring counsel, GJB, is critical to the Debtor's efforts to restructure its business because GJB has extensive experience and expertise in complex commercial reorganization case and has become very familiar with the Debtor's business, legal and financial affairs.  Accordingly, GJB is well-suited to guide the Debtor through the Chapter

11 process.

## BASIS FOR RELIEF

10.     Continued representation of the Debtor by its restructuring counsel, GJB, is critical to the success of the Debtor's reorganization efforts because GJB is and has become very familiar with the Debtor's business, financial and legal affairs.

11.     The Debtor has selected the firm of GJB as its attorneys because of GJB's experience with and knowledge of the Debtor and its business, as well as its extensive experience, knowledge and expertise in the field of Debtor and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

12.     The Debtor desires to employ the firm of GJB under a general retainer because of the extensive legal services that will be required in connection with its Chapter 11 case and the firm's familiarity with the business of the Debtor.

## SERVICES TO BE RENDERED

13.     The services of GJB are necessary to enable the Debtor to execute faithfully its duties as debtor-in-possession.  Subject to order of this Court, the law firm of GJB will be required to render, among others, the following services to the Debtor:

>    (a)     advise the Debtor with respect to its powers and duties as debtor and debtor-in-possession in the continued management and operation of its business and properties;

>    (b)     attend meetings and negotiate with representatives of creditors and other parties-in-interest and advise and consult on the conduct of the case, including all of the legal and administrative requirements of operating in Chapter 11;

>    (c)     advise the Debtor in connection with any contemplated sales of assets or business combinations, including the negotiation of sales promotion, liquidation, stock purchase, merger or joint venture agreements, formulate

and implement bidding procedures, evaluate competing offers, draft appropriate corporate documents with respect to the proposed sales, and counsel the Debtor in connection with the closing of such sales;

(d)    advise the Debtor in connection with post-petition financing and cash collateral arrangements, provide advice and counsel with respect to pre-petition financing arrangements, and provide advice to the Debtor in connection with the emergence financing and capital structure, and negotiate and draft documents relating thereto;

(e)    advise the Debtor on matters relating to the evaluation of the assumption, rejection or assignment of unexpired leases and executory contracts;

(f)    provide advice to the Debtor with respect to legal issues arising in or relating to the Debtor's ordinary course of business including attendance at senior management meetings, meetings with the Debtor's financial and turnaround advisors and meetings of the board of directors, and advice on employee, workers' compensation, employee benefits, labor, tax, insurance, securities, corporate, business operation, contracts, joint ventures, real property, press/public affairs and regulatory matters;

(g)    take all necessary action to protect and preserve the Debtor's estate, including the prosecution of actions on its behalf, the defense of any actions commenced against the estate, negotiations concerning all litigation in which the Debtor may be involved and objections to claims filed against the estate;

(h)    prepare on behalf of the Debtor all motions, applications, answers, orders, reports and papers necessary to the administration of the estate;

(i)    negotiate and prepare on the Debtor's behalf a plan of reorganization, disclosure statement and all related agreements and/or documents, and take any necessary action on behalf of the Debtor to obtain confirmation of such plan;

(j)    attend meetings with third parties and participate in negotiations with respect to the above matters;

(k)    appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtor's estate before such courts and the U.S. Trustee; and

(l)    perform all other necessary legal services and provide all other necessary legal advice to the Debtor in connection with this Chapter 11 case.

14.     The firm of GJB is willing to act on behalf of the Debtor as set forth above.

## DISINTERESTEDNESS OF PROFESSIONALS

15.     Except as set forth in the Battista Affidavit, to the best of the Debtor's knowledge, the shareholders, counsel and associates of GJB: (a) do not have any connection with the Debtor, its affiliates, its creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party in interest, or its respective attorneys and accountants; (b) are Adisinterested persons,@ as that term is defined in Section 101(14) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to the Debtor's estate.

16.     More specifically, as set forth in the Battista Affidavit:

(a)     Neither GJB nor any attorney at the firm holds or represents an interest adverse to the Debtor's estate.

(b)     Neither GJB nor any attorney at GJB is or was a creditor, an equity holder, or an insider of the Debtor, except that GJB previously rendered legal services to the Debtor for which it was compensated.

(c)     Neither GJB nor any attorney at GJB is or was, within two years before the Petition Date, a director, officer or employee of the Debtor.

(d)     GJB does not have an interest materially adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

## PROFESSIONAL COMPENSATION

17.     On August 9, 2010, GJB received an initial retainer from the Debtor in the amount of $15,000.00 (the "Initial Retainer").  On November 23, 2010, GJB received a further retainer from the Debtor in the amount of $100,000.00 (the "2010 Retainer").  In connection with the pre-petition legal services provided by GJB, GJB billed the Debtor: (i) $2,522.55 for fees and expenses through August 31, 2010; (ii) $1,176.00 for fees and expenses through September 30, 2010; and (iii)

$32,217.80 for fees and expenses through November 30, 2010 (the "2010 Pre-petition Invoices").

On December 16, 2010, GJB paid the 2010 Pre-petition Invoices and then returned $70,000 to the

Debtor from the 2010 Retainer.  In 2011, GJB billed the Debtor and the Debtor paid the following:

(i) $4,480.00 for fees and expenses through December 31, 2010; (ii) $2,828.95 for fees and expenses

through January 31, 2011; and (iii) $2,950.70 for fees and expenses through August 31, 2011.  On

October 3, 2011, GJB received a new retainer from the Debtor in the amount of $100,000.00 (the

"Retainer").  Prior to the filing of the within bankruptcy case, GJB transferred an amount equal to

$19,527.45 from the Retainer to GJB's operating account to pay the accrued fees and expenses

incurred by GJB during the month of September 2011.  As a result, GJB had a net Retainer for the

Chapter 11 case in the amount of $80,472.55 (the "Chapter 11 Retainer").

18.     All such fees and expenses were incurred (i) in contemplation of the filing of this

Chapter 11 case, and (iii) in respect of the preparation of this Chapter 11 case.  As of the Petition

Date, the Chapter 11 Retainer has been transferred to the attorneys' trust account of GJB.   In

connection with the preparation of this Chapter 11 case, GJB was required to estimate the amount of

fees and expenses incurred during the last several days prior to the Petition Date.  GJB paid such

estimated amounts from the Retainer prior to the filing of this Chapter 11 case.  If and to the extent

the actual fees and expenses incurred during such time period are less than the estimated amounts

paid, then GJB shall transfer such difference to the Chapter 11 Retainer.  If and to the extent that the

actual fees and expenses incurred during such time period exceed the estimated amounts paid, then

GJB hereby waives such excess fees and expenses.

19.     GJB intends to apply to the Court for allowance of compensation for professional

services rendered and reimbursement of charges and disbursements incurred in this Chapter 11 case

in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court.  GJB will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtor in this case at the then-current rate charged for such services.

20.     Consistent with the firm's policy with respect to its other clients, GJB will continue to charge the Debtor for all other services provided and for other charges and disbursements incurred in the rendition of services.  These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.

21.     GJB has agreed to accept as compensation such sums as may be allowed by the Court on the basis, among others, of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in this case.

22.     Other than as set forth herein and in the Battista Affidavit, no arrangement is proposed between the Debtor and GJB for compensation to be paid in this case, and no agreement or understanding exists between GJB and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case.

23.     No previous requests for the relief sought in this Application have been made to this Court or any other Court.

## REQUESTS FOR INTERIM RELIEF

24.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court

approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

25.    Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement of compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, its respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P.  2014.

26.    Pursuant to the recently revised Bankruptcy Rule 6003, the court may grant relief regarding an application pursuant to Bankruptcy Rule 2014 to retain a professional within 21 days after the filing of the petition to the extent the relief is necessary to avoid immediate and irreparable harm.  Bankruptcy Rule 6003, however, does not expressly forbid courts from entering interim orders approving professional retentions during the first 21 days of a chapter 11 case. See, e.g., First NLC Fin. Servs, LLC, No. 08-10632 (Bankr. S.D. Fla. Jan. 28, 2008); In re TOUSA, Inc., et al., No. 08-10928-BKC-JKO (Bankr. S.D. Fla. Jan. 31, 2008)(approving interim retentions of financial advisor and legal counsel on interim basis within first 20 days of chapter 11 case).

27.    First, according to the Advisory Committee note to Bankruptcy Rule 6003, the standard employed in Bankruptcy Rule 6003 is taken from Bankruptcy Rule 4001(b)(2) and (c)(2), and decisions under those provisions should provide guidance for the application of Bankruptcy

Rule 6003. Bankruptcy Rules 4001(b)(2) and (c)(2) are well understood and are the model for numerous first-day motions, such as obtaining credit and seeking use of cash collateral. That process is well established: if the court is so disposed, the partial relief is granted for the interim before the final hearing can be conducted. Later, after further opportunity for other parties in interest to consider the application and to object, the court, if so disposed will grant the balance of the relief requested.

28.    Second, Bankruptcy Rule 6003 is entitled "Interim and Final Relief Immediately Following the Commencement of the Case…." Thus, the very title of the Bankruptcy Rule contemplates that relief may be granted on an interim basis.

29.    Interim relief is clearly justified and appropriate in the context of this Application.

30.    It is well recognized in this district and others that a corporation must be represented by counsel to appear in court because it is merely an artificial entity that can only act through its agents and thus may not appear pro se. See, e.g., Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985) ("Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally . . . they must be represented by licensed counsel."); see also In re K.M.A., Inc., 652 F.2d 398, 399 (5th Cir. 1981) ("The law is clear that a corporation as a fictional legal person can only be represented by licensed counsel."); Jones v. Niagara Frontier Transp. Authority, 722 F.2d 20, 22 (2d Cir. 1983) ("[I]t is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed pro se.").

31.    Without general bankruptcy counsel, the Debtor is technically unable to proceed with this case. GJB will play an integral role in the first 21 days of this Chapter 11 case. Among other things, the Debtor will need GJB's assistance in stabilizing business operations, negotiating with key

creditor constituencies, addressing issues related to the "first day" hearing and related orders, constructing a business plan and plan of reorganization and defining the Debtor's path post-restructuring.

32.     Accordingly, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support immediate entry of an interim order, substantially in the form annexed hereto as Exhibit A, authorizing the Debtor to retain and employ GJB on an interim basis and to compensate GJB for any services rendered during that interim period in accordance with the Bankruptcy Code and the interim compensation procedures that may be established in this case. This interim form of relief ensures the availability of GJB's full resources to the Debtor during a critical period in this case, while preserving the ability of all parties in interest, including the U.S. Trustee, to object to this application on a final basis. The form of proposed order granting this application annexed hereto as Exhibit A clearly and unequivocally preserves any objections of all creditors and parties in interest to the final hearing on this application and further provides that any such objections will be considered *de novo*. Accordingly, no party is prejudiced by the limited relief sought by this application and the objective of the drafters of Rule 6003 is not frustrated.

WHEREFORE, the Debtor respectfully requests that the Court enter an interim order, in the form attached hereto as Exhibit A: (i) authorizing the Debtor's retention of Paul J. Battista, Esq. and the law firm of GJB on an interim basis upon the terms outlined in this Application nunc pro tunc to the Petition Date; (ii) setting a final hearing on this Application at least twenty-one (21) days from the date of the interim order; and (iii) granting such other and further relief as is just and proper.

DECORATOR INDUSTRIES, INC.

By: _____

William A. Johnson, Authorized
Officer

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flsb.uscourts.gov**

In re:

**DECORATOR INDUSTRIES, INC.,**                    **Case No. 11-37641-BKC-JKO**
                                                    **Chapter 11**

            **Debtor.**
_____/

**INTERIM ORDER PURSUANT TO 11 U.S.C. § 327(a) AUTHORIZING THE**
**EMPLOYMENT AND RETENTION *NUNC PRO TUNC* OF PAUL J. BATTISTA AND**
**THE LAW FIRM OF GENOVESE JOBLOVE & BATTISTA, P.A. AS GENERAL**
**BANKRUPTCY COUNSEL FOR DEBTOR-IN POSSESSION**

THIS CAUSE was heard before this Court upon the application (the "Application") of Decorator

Industries, Inc., as debtor and debtor-in-possession in the above-captioned case (collectively, the "Debtor"

or the "Company"), for entry of an interim order, pursuant to 11 U.S.C. §§ 327(a) and 330 and Bankruptcy

Rules 2014(a), 2016 and 6003, authorizing the Debtor to employ and retain Paul J. Battista, Esq. and the

law firm of Genovese Joblove & Battista ("GJB") under a general retainer as its restructuring and general

bankruptcy attorneys in its Chapter 11 case; and it appearing that the relief requested by the Application is

necessary to avoid immediate and irreparable harm to the Debtor's bankruptcy estate; and good, adequate

and sufficient cause has been shown to justify the immediate entry of this interim order; and it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors and other parties in interest; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Application and the Affidavit of Paul J. Battista, a shareholder of GJB, attached to the Application (the "Battista Affidavit"); and the Court being satisfied based on the representations made in the Application and the Battista Affidavit that (a) Battista and GJB do not hold or represent an interest adverse to the Debtor's estate, and (b) GJB is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and Local Rule 2014-1; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor, it is **ORDERED** that:

1.      The Application is GRANTED, on an interim basis, *nunc pro tunc* to the Petition Date;

2.      None of the disclosures or representations set out in the Battista Affidavit constitutes a conflict of interest or impairs the disinterestedness of GJB or otherwise precludes the Debtor's retention of Battista and GJB in this Chapter 11 case.

3.      The Debtor is authorized to employ and retain Battista and GJB as its general bankruptcy counsel in accordance with the terms and conditions set forth in this Application.

4.      GJB is authorized to render professional services to the Debtor as described in the Application.

5.      GJB shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtor's Chapter 11 case in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, guidelines established by the

Office of the United States Trustee for the Southern District of Florida and any other applicable procedures and orders of the Court.

6.      A final hearing on the Application is scheduled for _____, 2011 at __:__ a.m./p.m., prevailing Eastern Time, before this Court (the "Final Application Hearing") at the United States Bankruptcy Court, 299 East Broward Boulevard, Room ___, Fort Lauderdale, FL 33301.

7.      In the event the Application is not granted on a final basis, GJB shall be authorized to submit a fee application with this Court for compensation for services rendered in the period between the Petition Date and the Final Application Hearing.

8.      The requirements for emergency motions set forth in Local Rule 9075-1 are satisfied by the contents of the Motion or otherwise deemed waived.

9.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application. The Court finds that the entry of *nunc pro tunc* relief is warranted under the circumstances of this Chapter 11 case.

10.      Entry of this Interim Order is without prejudice to the rights of any party-in-interest to interpose an objection to the Application, and any such objection will be considered on a de novo standard at the Final Application Hearing.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this order.

###

Submitted by:
Heather L. Harmon, Esq.
Genovese Joblove & Battista, P.A.
Counsel to Debtor-in-Possession
100 SE 2nd Street, 44th Floor
Miami, Florida 33131
305-349-2300
hharmon@gjb-law.com

Copy to: Heather L. Harmon, Esq.
(Attorney Harmon is directed to serve a conformed copy of this Order on all parties in interest)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flsb.uscourts.gov**

In re:

**DECORATOR INDUSTRIES, INC.,**                    **Case No. 11-37641-BKC-JKO**
                                                   **Chapter 11**

                    **Debtor.**
_____/

**AFFIDAVIT OF PAUL J. BATTISTA,**
**ON BEHALF OF GENOVESE JOBLOVE & BATTISTA, P.A.,**
**PROPOSED BANKRUPTCY COUNSEL FOR DEBTOR-IN-POSSESSION**

STATE OF FLORIDA                )
                                ) ss:
COUNTY OF MIAMI-DADE            )

        I, Paul J. Battista, being duly sworn, deposes and says:

        1.      I am an attorney and shareholder of the law firm of Genovese Joblove & Battista,

P.A. ("GJB").  GJB maintains offices for the practice of law at Miami Tower, 100 Southeast Second

Street, Suite 4400, Miami, Florida 33131 and 200 East Broward Boulevard, Suite 1110 Fort

Lauderdale, Florida 33301.  I am familiar with the matters set forth herein and make this Affidavit in

support of the Emergency Application of Debtor-In-Possession for Employment *Nunc Pro Tunc* of

Paul J. Battista and GJB as General Bankruptcy Counsel for Debtor-In-Possession and Request for

Interim Relief (the "Application").

        2.      In support of the Application, I disclose the following:

                a.      Unless otherwise stated, this Affidavit is based upon facts of which I have

personal knowledge.

1

b.      In preparing this Affidavit, I have reviewed the list of all creditors and equity security holders of the Debtor provided to us by the Debtor.  GJB maintains a computerized conflicts check system.  GJB has compared the information obtained thereby with the information contained in its client and adverse party conflict check system.  The facts stated in this Affidavit as to the relationship between GJB and the Debtor, the Debtor's creditors, the United States Trustee, other persons employed by the Office of the United States Trustee, and those persons and entities who are defined as disinterested persons in Section 101(14) of the Bankruptcy Code, are based on the results of my review of GJB's conflict check system.  Based upon such search, GJB does not represent any entity in any matter involving or adverse to the Debtor or which would constitute a conflict of interest or impair the disinterestedness of GJB in respect of its representation of the Debtor herein.

3.      GJB=s client and adverse party conflicts check system is comprised of records regularly maintained in the course of business by GJB, and it is the regular practice of GJB to make and maintain these records.  The system reflects entries that are noted at the time the information becomes known by persons whose regular duties include recording and maintaining this information. I am one of the persons who is responsible for the supervision of the department of GJB which keeps this system up-to-date, and I regularly use and rely upon the information contained in the system in the performance of my duties with GJB and in my practice of law.

4.      GJB neither holds nor represents any interest adverse to the Debtor and is a Adisinterested person@ within the scope and meaning of Section 101(14) of the Bankruptcy Code.

5.      Neither I nor GJB has or will represent any other entity in connection with this case, and neither I nor GJB will accept any fee from any other party or parties in this case, except the Debtor-In-Possession, unless otherwise authorized by the Court.

2

6.    On August 9, 2010, GJB received an initial retainer from the Debtor in the amount of $15,000.00 (the "Initial Retainer").  On November 23, 2010, GJB received a further retainer from the Debtor in the amount of $100,000.00 (the "2010 Retainer").  In connection with the pre-petition legal services provided by GJB, GJB billed the Debtor: (i) $2,522.55 for fees and expenses through August 31, 2010; (ii) $1,176.00 for fees and expenses through September 30, 2010; and (iii) $32,217.80 for fees and expenses through November 30, 2010 (the "2010 Pre-petition Invoices").  On December 16, 2010, GJB paid the 2010 Pre-petition Invoices and then returned $70,000 to the Debtor from the 2010 Retainer.  In 2011, GJB billed the Debtor and the Debtor paid the following: (i) $4,480.00 for fees and expenses through December 31, 2010; (ii) $2,828.95 for fees and expenses through January 31, 2011; and (iii) $2,950.70 for fees and expenses through August 31, 2011.  On October 3, 2011, GJB received a new retainer from the Debtor in the amount of $100,000.00 (the "Retainer").  Prior to the filing of the within bankruptcy case, GJB transferred an amount equal to $19,527.45 from the Retainer to GJB's operating account to pay the accrued fees and expenses incurred by GJB during the month of September 2011.  As a result, GJB had a net Retainer for the Chapter 11 case in the amount of $80,472.55 (the "Chapter 11 Retainer").  All such fees and expenses were incurred (i) in contemplation of the filing of this Chapter 11 case, and (iii) in respect of the preparation of this Chapter 11 case.  As of the Petition Date, the Chapter 11 Retainer has been transferred to the attorneys' trust account of GJB.  In connection with the preparation of this Chapter 11 case, GJB was required to estimate the amount of fees and expenses incurred during the last several days prior to the Petition Date.  GJB paid such estimated amounts from the Retainer prior to the filing of this Chapter 11 case.  If and to the extent the actual fees and expenses incurred during such time period are less than the estimated amounts paid, then GJB shall transfer such difference to

3

the Chapter 11 Retainer.  If and to the extent that the actual fees and expenses incurred during such time period exceed the estimated amounts paid, then GJB hereby waives such excess fees and expenses.

7.      The professionals' fees and costs to be incurred by GJB in the course of its representation of the Debtor in this case shall be subject in all respects to the application and notice requirement of 11 U.S.C. §§ 330 and 331 and Fed. R. Bank. P. 2014 and 2016.

8.      The hourly rates for the attorneys at GJB range from $195 to $595 per hour.  The hourly rates of Paul J. Battista, Mariaelena Gayo-Guitian, Heather L. Harmon and Michael L. Schuster, the attorneys who will be principally working on this case, are $595, $435, $410 and $295, respectively.  The hourly rates for the legal assistants at GJB range from $75 to $170.  GJB reserves the right to increase its hourly rates in accordance with its normal and customary business practices.

9.      There is no agreement of any nature as to the sharing of any compensation to be paid to GJB, except between the attorneys of GJB.  No promises have been received by GJB, nor any member or associate thereof, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

10.     No attorney at GJB holds a direct or indirect equity interest in the Debtor, including stock or stock warrants, or has a right to acquire such an interest.

11.     No attorney at GJB is or has served as an officer, director or employee of the Debtor within two years before the Petition Date.

12.     No attorney at GJB is in control of the Debtor or is a relative of a director, officer or person in control of the Debtor.

13.     No attorney at GJB is a general or limited partner of a partnership in which any of the Debtor is also a general or limited partner.

14.     No attorney at GJB is or has served as an officer, director or employee of a financial advisor that has been engaged by the Debtor in connection with the offer, sale or issuance of a security of the Debtor, within two years before the Petition Date.

15.     No attorney at GJB has represented a financial advisor of the Debtor in connection with the offer, sale or issuance of a security of the Debtor within three years before the Petition Date.

16.     No attorney at GJB has any other interest, direct or indirect, that may be affected by the proposed representation.

17.     Except as set forth herein, no attorney at GJB has had or presently has any connection with the above-captioned Debtor or the estate on any matters in which GJB is to be engaged, except that I, GJB and our attorneys: (i) may have appeared in the past and may appear in the future in other cases in which one or more of said parties may be involved; and (ii) may represent or may have represented certain of the Debtor's creditors in matters unrelated to this case.

5

FURTHER, AFFIANT SAYETH NOT.

_____

PAUL J. BATTISTA, ESQ.


SWORN TO AND SUBSCRIBED before me this _3rd_ day of October 2011.

NOTARY PUBLIC,
STATE OF FLORIDA AT LARGE

Print Name: _JEAN MARIE Wilson_

Commission No._____

Commission Expires:_____

JEAN MARIE WILSON
MY COMMISSION # DD703382
EXPIRES: October 25, 2011
1-800-3-NOTARY    Fl. Notary Discount Assoc. Co.

6